UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NANCY SINGER, | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 1783 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| SUNBEAM PRODUCTS, INC, a corp., BED BATH AND BEYOND, INC., a foreign corp., BED BATH AND BEYOND OF CALIFORNIA, a limited liability company, LIBERTY PROCUREMENT COMPANY, INC., a corp. | ) ) ) ) ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Nancy Singer believes that the fire that destroyed her suburban Chicago home in April 2013 was caused by a Sunbeam brand humidifier that she purchased in February 2010 from a Bed Bath and Beyond store. Singer brought this suit in the Circuit Court of Cook County, Illinois, asserting multiple state law claims against Sunbeam and several Bed Bath and Beyond-related entities. Doc. 1-2. After removing the case to federal court, Doc. 1, Defendants moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss four of the amended complaint's six counts. Doc. 8. The court granted the motion as to Singer's express warranty claim but allowed her to replead. Docs. 56-57 (reported at 2015 WL 4555188 (N.D. Ill. July 28, 2015)). Singer filed a second amended complaint repleading her express warranty claim, Doc. 58, and Defendants have again moved to dismiss that claim, Doc. 61. The motion is denied.

**Background**

On a Rule 12(b)(6) motion, the court must accept the operative complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Singer's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The

1

court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Singer's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Singer as those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

The court's opinion on the earlier motion to dismiss sets out the pertinent facts. To summarize, Singer's house caught fire on April 8, 2013 while she was using a Sunbeam brand humidifier that she had purchased from a Bed Bath and Beyond store on February 6, 2010. Doc. 58 at pp. 2-3, ¶¶ 2-3, 7. The first amended complaint asserted, among other things, a claim for breach of express warranty. Doc. 1-2 at 7-8. Defendants moved to dismiss that claim as untimely. Doc. 8 at 3-4. Although the parties agreed that Illinois law governed the claim and that the statute of limitations for breach of sale contracts is four years, *see* 810 ILCS 5/2-725(1), they disputed when the limitations period commenced. 2015 WL 4555188, at *2-4.

Section 2-725(2) of the Uniform Commercial Code ("UCC"), which Illinois has codified in pertinent part, provides:

> A cause of action [for breach of any sale contract] accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, *except* that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

810 ILCS 5/2-725(2) (emphasis added). Because Singer filed this suit on January 21, 2015— more than four years after tender of delivery was made on February 6, 2010—the court dismissed her express warranty claim as time-barred. 2015 WL 4555188, at *3-4. But it did so

2

without prejudice because Singer could potentially cure the defect if the humidifier's warranty, in the words of § 2-725(2), "explicitly extend[ed] to future performance."

Singer attempts to do precisely in this round. In her brief opposing dismissal, she argues that three statements in the humidifier's instruction manual or on its packaging qualify as express warranties. First, she contends that the term "Automatic Shut-Off" in the instruction manual creates a warranty that "was breached when the product did not automatically shut off but instead overheated, began to flame and caused a general conflagration." Doc. 69 at 2. Second, she points to this statement on the packaging: "Humidifier boils water which removes impurities, producing a warm soothing mist." Doc. 69-3. Singer argues that this statement amounts to a warranty, one that was breached "when the product produced flames instead of a 'warm soothing mist.'" Doc. 69 at 3. Third, she points once again to the instruction manual, which states, under the heading "1 YEAR LIMITED WARRANTY," that Jarden Consumer Solutions ("JCS") warrants the product "for a period of one year from the date of purchase" to be "free from defects in material and workmanship." Doc. 69 at 2; Doc. 69-1 at 2. The pamphlet further provides that "JCS, at its option, will repair or replace this product or any component of the product found to be defective during the warranty period." Doc. 69-1 at 2.

## Discussion

Tor Singer to have a timely express warranty claim, at least one of the three above-referenced statements must (1) be an express warranty and (2) explicitly extend to future performance under § 2-725(2). The second requirement eliminates the first two statements. As discussed in the court's prior opinion, "explicit" under § 2-725(2) means "[n]ot implied merely, or conveyed by implication; distinctly stated; plain in language; clear; not ambiguous; express; unequivocal." *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 454 (Ill. 1982) (alteration

3

in original); *see also Cosman v. Ford Motor Co.*, 674 N.E.2d 61, 65 (Ill. App. 1996) ("We require that the extension of a warranty to 'future performance' be explicit."); *Chi. Heights Venture v. Dynamit Nobel of Am., Inc.*, 575 F. Supp. 214, 220 (N.D. Ill. 1983). In *Moorman Manufacturing*, the Supreme Court of Illinois held that there was no explicit warranty of future performance under § 2-725(2) when "there was no reference to future time in the warranty." 435 N.E.2d at 454 ("The mere expectation that a product's warranty extends for the life of the product does not delay the point at which the statute of limitations commences to run."). The phrases "Automatic Shut-Off" and "Humidifier boils water which removes impurities, producing a warm soothing mist" do not refer to some future time, and therefore could not explicitly extend to future performance. *See ibid.* (holding that a manufacturer's warranty that its grain-storage tank was designed to withstand 60 pounds per bushel grain and 100 mile per hour winds "did not explicitly extend to future performance"); *Ridle v. Sprayrite Mfg. Co.*, 555 N.E.2d 1272, 1274 (Ill. App. 1990) (holding that breach of warranty claims were time-barred where the warranties did "not refer to a specific future time frame").

The third statement cited by Singer—that the humidifier is warranted "for a period of one year from the date of purchase" to be "free from defects in material and workmanship"—does refer to the future, as it explicitly extends for "a period of one year from the date of purchase." But does this promise qualify as an express warranty of the product, given that it limits the buyer's remedy to repair or replacement of the humidifier? The Supreme Court of Illinois recently considered a similar question in *Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047 (Ill. 2007), which considered whether a 3-year/36,000-mile vehicle warranty that covered only "the cost of all parts and labor needed to repair any item … that's defective in material, workmanship, or factory preparation" qualified as a "warranty extend[ing] to future

performance" under § 2-725(2). *Id*. at 1051, 1058. In deciding that the warranty did not so qualify, the court explained that a promise to "repair or replace defective parts during the warranty period" is not an express warranty because it "does not warrant that the [good] will conform to some affirmation, promise, description, sample or model." *Id*. at 1058 ("The UCC makes plain that an express warranty is related to the quality or description of the goods."). And because a promise to repair is not an express warranty, § 2-752(2)'s accrual standard for breaches of warranties—including the future performance exception—had no application to that case. *Id*. at 1056. In so holding, *Mydlach* favorably cited *Cosman*, which elaborates on the difference between a promise to repair and an express warranty extending to future performance:

> [A promise to repair] warrants only that the dealer will repair, replace, or adjust defects if parts of the powertrain in fact do malfunction. It does not warrant the quality of the powertrain or its performance. Plaintiffs argue "[w]hile there may be a theoretical difference between a warranty that the goods will perform without defect and a warranty that the goods will continue to perform because if they break, the warrantor will fix them, both are similarly prospective." Illinois courts since *Moorman* have rejected this reasoning and require an explicit statement that the *goods*, not the *warrantor*, will perform in a certain way in the future. A promise to repair parts of the powertrain for six years is a promise that the manufacturer will behave in a certain way, not a warranty that the vehicle will behave in a certain way.

*Cosman*, 674 N.E.2d at 66.

Unlike the warranty in *Mydlach*, the warranty in the present case not only provides that JCS will repair or replace defective components, but also affirmatively promises that "for a period of one year from the date of purchase, this product will be free from defects in material and workmanship." Based on the analysis underlying *Mydlach* and *Cosman*, this statement qualifies as an express warranty under the UCC because it relates to the quality of the product and guarantees that the humidifier will be free from defect. *See Great W. Cas. Co. v. Volvo Trucks N. Am., Inc.*, 2013 WL 617068, at *7 (N.D. Ill. Feb. 19, 2013) (holding that Volvo made an express warranty by promising that "certain individual components of the new Volvo [truck

5

or engine were] free from defects in material and workmanship") (alteration in original); *Snyder v. Komfort Corp.*, 2008 WL 2952300, at *4 (N.D. Ill. July, 30, 2008) (relying on *Mydlach* in holding that a warranty that promised only "repair and replacement" was not an express warranty under the UCC). This is true even though the express warranty exists alongside a promise to repair the humidifier in the event it malfunctions, for the presence of the latter does not extinguish the effect of the former. *See Joswick v. Chesapeake Mobile Homes, Inc.*, 765 A.2d 90, 94-95 (Md. 2001) (while "a commitment to repair or replace defective parts … is not, itself, a warranty explicitly extending to future performance," such a clause does not serve to "convert a warranty that does extend to future performance into one that does not do so") (emphasis omitted).

It follows that the humidifier came with an express warranty explicitly extending to future performance. *See Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 816-17, 821 (6th Cir. 1978) (holding that a warranty extended to future performance where it said that the equipment "will be free from defects in workmanship and material" and that if "any part be found within one year from date of delivery to have been defective … the Seller will replace or repair such part"); *Smith v. Union Supply Co.*, 675 P.2d 333, 334-35 (Col. App. 1983) (holding that "the contract contains both a warranty to effect repairs for five years, and an explicit guarantee as to the future performance of the goods" where the warranty read "Roof surface and installation shall be guaranteed unconditionally for a period of five years and any leakage occurring within that time shall be promptly repaired or replaced by Union Supply Co."); *Joswick*, 765 A.2d at 92, 96 (holding that a warranty providing "that the goods will have a certain quality or be free from defects for a certain period of time" fell within the UCC's § 2-725(2) future performance exception even though the warranty also provided for repair and

replacement as the exclusive remedy); *Executone Bus. Sys. Corp. v. IPC Commc'ns, Inc.*, 442 N.W.2d 755, 759-60 (Mich. App. 1989); *but see Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 500-02 (S.D. Ohio 2012) (concluding that a warranty providing that patio doors and windows would be "free from defects in manufacturing, materials and workmanship for a period of ten (10) years from the date of first purchase" did not extend to future performance because, "when read as a whole," it limited the buyer's remedy to repair or replacement). Accordingly, Singer's claim accrued from the point "when the breach is or should have been discovered"— that is, when her house caught fire in April 2013. As this suit was filed on January 21, 2015, her express warranty claim falls within the four-year limitations period.

Although Singer's express claim is timely, it can survive dismissal only if she has adequately alleged that the warranty, which on its face extends for only one year, has been breached. Under Illinois law, "express warranties of limited duration cover only defects that become apparent during the warranty period." *Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950 (Ill. App. 2005); *see also Tokar v. Crestwood Imports, Inc.*, 532 N.E.2d 382, 388 (Ill. App. 1988) (quoting *Walsh v. Ford Motor Co.*, 588 F. Supp. 1513, 1536 (D.D.C. 1984), for the proposition that "plaintiffs who fail to allege … malfunctions within the warranty period may not assert … warranty claims") (alterations in original). Without this limitation, a customer could "compel the manufacturer to insure all latent defects for the entire life of the product" by alleging that the defect was present during the warranty period but simply did not manifest itself until after the warranty expired. *Evitts*, 834 N.E.2d at 950.

Nothing in the operative complaint suggests that the defect manifested at any point before the humidifier caught fire—three years, two months, and two days after Singer purchased it and well outside the one-year warranty period. Singer contends that the warranty's one-year

7

limitation "is unreasonable and should not be enforced." Doc. 69 at 2. Rather than respond to this argument, Defendants simply reiterate their point that the statute of limitations renders Singer's breach of express warranty claim untimely. Doc. 72 at 2 ("Plaintiff argues that one year is [sic] limited warranty is unreasonable. However, even if the court did agree with Plaintiff, those 'warranty' [sic] should not be extended past the four (4) year statutory limitation."). The failure to substantively address Singer's unenforceability argument forfeits the point. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument …"); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver.").

Forfeiture aside, Singer's assertion that the one-year period is invalid is plausible enough to forestall dismissal of her express warranty claim at the Rule 12(b)(6) stage. Under Illinois law, a contractual clause "may be unenforceable if it is either procedurally or substantively unconscionable." *Phoenix Ins. Co. v. Rosen*, 949 N.E.2d 639, 647 (Ill. 2011). Procedural unconscionability consists of "some impropriety during the process of forming the contract depriving a party of meaningful choice," and requires a court to consider "all of the circumstances surrounding the formation of the contract." *Ibid.*; *see also Cannon v. Burge*, 752 F.3d 1079, 1102 (7th Cir. 2014). A determination of unconscionability may "turn on a showing of acts of bad faith such as concealments, misrepresentations, [or] undue influence." *Levey v.*

*CitiMortgage, Inc.*, 2009 WL 2475222, at *4 (N.D. Ill. Aug. 10, 2009) (alteration in original) (internal quotation marks omitted); *see also Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 281 (7th Cir. 1992) (describing unconscionability as being "closely allied" to the doctrines of fraud and duress).

In *Evitts*, the Appellate Court of Illinois considered whether an express warranty's terms, including its duration, were unconscionable. 834 N.E.2d at 949. The plaintiffs argued that the "defendants had knowledge of the allegedly defective defroster at the time plaintiffs purchased their vehicle and failed to disclose [it], rendering the limitation on the warranty unconscionable." *Ibid*. The court rejected that argument because the allegations of defendants' knowledge were conclusory. *See id.* at 948-950 ("Having already concluded that plaintiffs' complaint was insufficient to allege that DCMC knowingly sold them a vehicle with a defective rear defroster, we find that the express manufacturer's warranty sold with the vehicle was not unconscionable …."). But the fact that the court entertained the argument suggests that its underlying unconscionability theory was valid. Indeed, in *Stavropoulos v. Hewlett-Packard Co.*, 2014 WL 2609431 (N.D. Ill. June 9, 2014), the court held that a warranty's one-year term was unenforceable on unconscionability grounds because the complaint "contain[ed] allegations sufficient to support a plausible theory that HP knew the 1040/1050 models were defective before Stavropoulos' 2010 purchase." *Id*. at *3.

Here, Singer pleads that "the defendant Sunbeam and defendants Bed Bath and Beyond knew or should have known that the afore-identified humidifier was prone to an unreasonable risk of starting a fire" as well as "electrical failure." Doc. 58 at p. 2, ¶¶ 5-6. While similar allegations were found insufficient under Illinois pleading standards in *Evitts*, "federal pleading standards apply when considering a motion to dismiss a complaint that rests on diversity

jurisdiction." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 782 n.5 (7th Cir. 2015); *see also Windy City Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670-72 (7th Cir. 2008). And under those standards, Singer's complaint adequately alleges Defendants' bad faith. Even if Federal Rule of Civil Procedure 9(b) applied in these circumstances, that rule permits plaintiffs to allege fraudulent intent generally. *See Staples v. Paragon Sys., Inc.*, 607 F. App'x 569, 569 (7th Cir. 2015); *Armstrong v. Daily*, 786 F.3d 529, 547 & n.6 (7th Cir. 2015). Discovery will reveal whether there is any evidence to support Singer's claim. But at this stage it is at least plausible that the warranty's one-year limitation is unconscionable if, as Singer plausibly alleges, Defendants knew that the humidifier was defective when Singer purchased it.

**Conclusion**

The warranty providing that "for a period of one year from the date of purchase, this product will be free from defects in material and workmanship" qualifies as an express warranty "explicitly extend[ing] to future performance." As such, Singer's claim for breach of that warranty did not accrue until "the breach [was] or should have been discovered," making it possible (if not probable) that the claim is timely. And because the warranty's one-year time limitation may be unconscionable, it could have been breached even if the defect manifested more than one year from the date Singer purchased the humidifier. For these reasons, Defendants' motion to dismiss the express warranty claim is denied.

_____

United States District Judge            April 28, 2016

10